The next case is 2010-3122, Schechner v. DHS. Mr. Holmes, would you be so kind? Thank you, Your Honor. May it please the Court. This case involves two related issues, of course, both of which involve the severe depression that Mr. Schechner was suffering from while working for TSA. The first issue is the specific method by which the administrative judge resolved the issue. The second issue, which is closely related, is the agency's argument that you should expand, or tighten, I suppose, the Let me start by conceding, certainly, that there has to be some level of causation. The mere fact that somebody is mentally or physically impaired by itself is not a mitigating factor. There's always going to have to be some connection between that impairment, mental or physical, and the actual conduct with which they're charged. There has to be some connection. The Board has, in the past, used the standard that it must have played a part. And in Malloy, this Court followed that reasoning, that analysis. The Government now is arguing for a more stringent causation standard, literal causation. But we're talking about the Board opinion here, and that didn't necessarily apply to the same standard that you're arguing about. That's correct. So that's kind of separate. Whether we adopt what the Government is advocating is one thing, but whether or not you're challenging the Board's opinion, your decision here on mitigation. Yes, that's correct. And that's why I phrase that as a secondary issue. The primary issue is one, of course, that we have to get by first. But you don't disagree that the Board applied the appropriate standard with respect to causation? I'm not sure that I could even agree with that, because I'm not sure the Board, or at least the Administrative Judge, there was no opinion from the Board itself, that the Administrative Board even applied a causation standard. Instead, what the Administrative Judge did was somewhat similar to what the Administrative Judge did in Molloy. In Molloy, the Administrative Judge had said, the petitioner, or the employee, has given me this big bundle of information. I find nothing in here that is mitigating. And you overturn that and sit it back down for further consideration. Here, the Administrative Judge went a little bit further and made at least a few comments about the mitigation evidence, the evidence of mental impairment. Not really a causation finding, per se, but rather, first of all, saying, number one, Mr. Sheckner could have gone out and tried to get treatment. And secondly, I'm not sure that certain circumstances here show that the mental disability, the severe depression, was affecting his judgment. I suppose in some sense that is akin to a causation issue. But then again, the rationale that were given by the Administrative Judge for that finding is, Mr. Sheckner says that his work performance was not affected. But in fact, the record is replete with the evidence we put in that his work performance was affected. Now, in fact, he received a 2008 performance award for the year as a whole. But he testified that in the latter part of the year, which is when this conduct occurred, that he was beginning to have all sorts of problems. He was losing his attention. He was losing his energy. His judgment was being impaired. And we presented evidence from a coworker corroborating all of that, that other people working with Mr. Sheckner could see the difference in his behavior, that he was no longer attentive to details, that he was no longer accurate, that he was beginning to make mistakes. But it seems to me a difficulty you have is that even accepting everything you say, that if the depression we can establish that it made him less attentive to detail, that doesn't really explain the litany of conduct here that was the subject of removal that you're not challenging. It wasn't a one-time thing. This wasn't a performance based where he wasn't putting out as many documents as he otherwise would. These were, what, 39? Lots of incidents of misconduct, right? Yeah, there were 39 or thereabout number of incidents. So this wasn't just that he was less attentive to detail and that explains, even if that was the result of the depression, that that's sufficient to explain away all of the misconduct that he was charged with here, right? Well, the conduct, though, is a coping mechanism. And you have somebody who is severely depressed, who's having trouble at the office. What people like that do is going to be to get away from the stress. And the conduct he was engaging in, essentially, was leaving the office and going other places, going home, going to, oddly enough, animal shelters, which he apparently found to be calming, being around animals and animal shelters. He was leaving the office and he was taking the government car, the vehicle. Right, and he had lots of sick leave that was available to him that he was not using. Right, but again, that puts the burden, essentially, on the person who has a mental impairment to make rational judgments, make rational decisions. We did put on considerable evidence from Dr. Schoonmaker, from Dr. Delafleur Weiss, that this was a, that he was severely depressed. He eventually had to be medicated. It was a growing, expanding condition that was not, that was caused by organic issues that he had, his diabetes, his hyperglycemia, and ultimately, the fact that he was developing Parkinson's, that these ailments are things that affect the brain and for which depression is a symptom. It's not a matter of being depressed because you have Parkinson's, but rather that Parkinson's itself creates organic changes in the brain that can lead to depression. This is something that grew to the point that he eventually, as we established, was medicated and underwent significant treatment. We presented evidence from his co-worker and from him that this was affecting his judgment at the time. Depression is, the behavior he engaged in is exactly, frankly, the kind of behavior you would expect from a severely depressed person. Getting away from a stressful environment, that's how he explained it, and trying to essentially, in a way, self-medicating, although sometimes people with mental illness go out and self-medicate with illegal drugs, he was giving himself a form of psychotherapy. That is consistent with his depressed behavior. Now what the administrative judge held, on the other hand, or the way she brushed that away was to say, well, Mr. Schechner says that he was able to go to the doctor. He made his doctor appointments, was one of her rationales. The fact that you're able to get to the doctor is not inconsistent with being depressed. It's not inconsistent with this being a legitimate mitigating factor that needed to be considered. Likewise, she said, well, Mr. Schechner says that his work performance was good, but then she found that he committed three acts of negligence during this period of time. Do you think that she said, I'm not going to consider his depression at all? Or do you think that she said, I've considered it and I find that it doesn't support a determination to mitigate the penalty? I think her actual words, I believe she said that, I'm trying to find the quotation. I believe- It's 36 of the- Thank you. Appendix, if that helps. Well, okay, the appendix here. It's 36 at the top. I do not find the appellant's depression to be a mitigating factor in his misconduct. Right, that was the line I was looking for, which I did not quote in my brief, apparently. And that's exactly what we believe that she did find, that she found that it wasn't a mitigating factor because she was able to look at and, for example, say, well, he was able to go to the doctor. He tried to cover up his behavior. She, very similar to what the administrative judge did in Malloy, found ways to sidestep the issue, whereas the judge in Malloy just said- Wait, did she sidestep it? I mean, it seems to me that she addressed it head on. She said, look, I don't find depression to mitigate the punishment that he's entitled to in this case because here are all- It didn't cloud his ability to think. And she lists a litany of things. Now, I may not agree with them, but those are fact findings that I have to review under a very deferential standard as an appellate court judge. So, I mean, what I'm trying to understand is are you arguing she absolutely didn't consider this at all or are you saying, well, she considered it and I don't like the way she resulted? Well, I would put it a little bit differently. Obviously, this paragraph exists, so she did consider it in some form or fashion. But what she did, she failed to consider it as a mitigating factor. That was the way I would state it. She found reasons- She failed to consider it and whether it should be a mitigating factor at all or she considered it and decided it shouldn't be a mitigating factor because of these factual reasons. Well, that's not clear from what she wrote. We have to- But is that what the whole case turns on? Because I think the government would acknowledge that if she refused to consider it at all wiped it aside and said, maybe not, we'll find out in a second, but threw it aside and said, no, I won't even consider this, that that would be really troubling and problematic because she clearly did a lot more than that here. And so is the really specific line that we really need to figure out whether or not she actually did consider it? I think that's a good way of looking at it, I suppose. I would, of course, have the additional argument that her grounds for rejecting it were not supported by substantial evidence, which, of course, we've also dealt with. But she did not- She recognized the evidence existed and then ultimately made the statement that we just quoted, that she found it was not a mitigating factor at all, which on its face is not good under the law. But then she goes on and gives various reasons for why she's rejecting it. And as we pointed out, these aren't supported by substantial evidence. For example- But the fact that they exist or the fact that it's not supportable that these were sufficient- Right. To make the argument that there shouldn't be mitigation. I mean, you're not disputing that these are factually true, or are you? Yes, we are, certainly are. For example- He did not tell anyone how he was using the vehicle? Oh, that one we don't dispute. And why- The first one. So the first one, okay. But the other four are factually accurate. The other four are factually accurate, yes. So they are supported by substantial evidence. Those are supported by substantial evidence to the extent that the question of whether those somehow negate- those facts negate a finding that he was impaired and that his judgment was impaired. How are those- It's that finding, that those particular facts, I guess the link that, for example, the fact that he was able to go to the doctor's office, that that is evidence somehow that the fact that- Let me start at the beginning. The fact that she's finding here, the operative fact, is whether the depression clouded his ability to think clearly, as she puts it in here. And she says, Further, I find his claims that his depression clouded his ability to think clearly is inconsistent with these facts. It's that first finding that she made that I just quoted that we're saying that there's no substantial evidence for, that her rejection of the- that the depression clouded his ability to think clearly. That finding is not supported by substantial evidence. Now, she gives various subsidiary facts in support of that finding, but those facts don't- There's no linkage. For example, the first one, He continued to perform adequately at work. Well, she found three instances of negligence. And we presented quite a bit of evidence that he was not performing adequately at work, that he was impaired, and that was unrefuted. That he didn't tell anyone he was using the vehicle. Well, what does that have to do with whether his judgment is clouded? The fact that he's not telling anybody what he's doing, that he's engaging in this conduct, shows that his judgment is clouded. These particular facts that she uses to reach this larger conclusion, the facts do not support it. And that's really where we're going when I'm talking about substantial evidence. It's not so much that these subsidiary facts are not supported by evidence, but rather they don't support the ultimate factual conclusion that she reaches, that her rejection of the notion that his judgment was clouded. Thank you. Is it Niosi? It is Niosi. Thank you. May it please the Court. The Court should affirm the Board's decision because the removal penalty in this case is neither harsh nor unconscionably disproportionate to the misconduct. What is the government's position on what the standard is that we should apply? Is it whether or not mental impairment caused the conduct or whether or not it played a part in the conduct? The government is not intending to create a higher burden than that which Mr. Schechner cited in his brief or that's been discussed in the Board decisions. The Board's decisions all use concepts of some kind of causal relationship between the misconduct and the mental impairment. For example, in the Roseman decision by the Board, the Board looked at whether the impairment accounted for the misconduct and in the McDowell Board decision, the Board looked at whether the nervous breakdown caused the misconduct. All of these decisions reflect some kind of causal relationship. We would argue that the stronger the causal connection, perhaps the greater the weight that would be owed to the evidence of mental impairment, the greater mitigating weight. But we're not establishing a new standard. In fact, Mr. Schechner's own brief referred to the fact that his misconduct was caused by his misconduct was caused by mental impairment. Both the Board and the parties have used the concept of causal relationships in the same way. And so we're not creating a new standard, not seeking to impose a higher burden on Mr. Schechner than has already been established in the Board's decisions. And the administrative judge did not brush aside or sidestep any evidence in this case. This case is not like the Molloy decision. In Molloy, the administrative judge was presented with voluminous medical records from before, during, and after the period of misconduct. And this Court saw no reference at all to that evidence in the administrative judge's initial decision in that case. Here, in contrast, the administrative judge detailed all of the evidence that was presented and she directly addressed Mr. Schechner's claim that depression was the cause of his misconduct. We see that at the Joint Appendix at page 34. She discusses Mr. Schechner's claim of depression and then at page 36 of the Joint Appendix, the page you were just discussing with Petitioner's Counsel, she weighs and she considers that evidence and she concludes that it didn't play a part in his misconduct. Now, she doesn't use that exact language, but that is the essence of her conclusion. So, the administrative judge here has done exactly what this Court wanted the administrative judge to do in the Malloy case, which was to take into consideration the mental impairment evidence and weigh it against all the other Douglas factors. And now here, the administrative judge agreed with the deciding official that the misconduct here was quite serious and that it reflected on his integrity as well as his supervisor's ability to trust his, to trust Mr. Schechner's ability to perform his responsibilities as a security inspector, which required him to go out, inspect the air cargo carriers for security weaknesses and protect the public against the safety risks. So, the administrative judge did take into account the medical evidence that was presented. She just concluded that it didn't play a part in his misconduct. And... Let's assume that it did. It played some part in his misconduct. If one were to conclude that, where does that leave the employer in this circumstance? If it played a part in the misconduct, then it would have to be considered in the context of the other Douglas factors. And Mr. Vaila, the deciding official, testified that he was, he found Mr. Schechner's misconduct to be egregious and serious and that it completely eviscerated his confidence in Mr. Schechner's ability to do his job. So, the fact that the mental impairment played a part in the misconduct would just be one of the numerous factors that would have to be weighed in determining the appropriate penalty. In this case, Mr. Schechner is asking this court to re-weigh the evidence that was already presented to the administrative judge. He's indicated that the subsidiary facts are supported by the substantial evidence. He doesn't dispute that he lied... He does dispute the adequacy of his work performance during this period. He does, but he did the record is clear that in December of 2008 he received a performance award for his performance in 2008 and that's something that the administrative judge specifically mentioned in her opinion and Mr. Schechner has stated in his brief that he does somewhat dispute the charge that he was negligent in performing his responsibilities and so it's, there is sufficient or substantial evidence in the record for the administrative judge to conclude that he was performing his responsibilities adequately through 2008. And this court will, doesn't re-weigh the evidence, which is essentially what Mr. Schechner is asking the court to do, is to re-weigh the evidence and just strike a different balance, but the court does not substitute its judgment for that of the deciding official and the board in this case and where the record shows that the administrative judge and the deciding official considered all of the, I'm sorry, all of the Douglas factors this court should not re-weigh the evidence and substitute its judgment. I'd like to point out also that 31 U.S.C. section 1349B authorizes the deciding official to impose suspension without pay for up to a month and that statute also indicates that under more serious circumstances, the penalty could be suspension for a longer period of time or even summary removal. And here Mr. Schechner engaged in not just one instance of misuse of the government vehicle, but 38 instances of misuse of the government vehicle. And then on top of that he, on 46 different occasions, misused the government resources. He, on numerous occasions, falsified his time and attendance records and also engaged in three instances of negligent performance of his responsibility. So under 31 U.S.C. section 1349B the deciding official reasonably concluded that removal was an appropriate remedy. And Can he get a performance award? He got a performance award in December of 2008. During the same period in which he committed all of these offenses. Is that because there's something between performance and misconduct? I mean, he was doing all of this and he was still performing well in his duties? The misconduct was not discovered until January of 2009 after he received the award. And Mr. Vaila did take into account... And most of the misconduct took place at the very tail end of 2008. Between October 2008 and the end of January 2009 when the when his supervisor noticed that there was a discrepancy between the mileage used on his car and the inspections that he was making. And the deciding official did take into account his the evidence of Mr. Schechner's relatively good work history and he also noted, however, that in 2005 Mr. Schechner had been placed on a performance improvement plan. So all of this evidence was presented to the deciding official as well as the the administrative judge and was weighed and balanced along with the other Douglas factors. So for these reasons we request that the court affirm the board's decision and uphold the penalty for mobile. Thank you. Yeah. I'll make three quick points. First of all, the performance award. That was for the entire year of 2008. Our evidence shows that his performance declined during the latter part of the year and of course as I think we all know, performance awards are not typically, this was an award given in December. The decision undoubtedly was made sometime before that. The entire year had not finished. The performance award came out before the end of the year. Secondly, we're not asking you to re-weigh evidence. What we're asking you to do is to look to see whether there is substantial evidence to support the administrative judge's finding that there was no evidence or however she phrased it again, that the depression was not clouding his judgment. We're asking you to look to see whether there is substantial evidence to support that. Given that the only evidence is from our psychiatrists, our treating physician, Mr. Schechner himself and a co-worker are all telling you that it did. Instead she is saying, the administrative judge is saying, I find that that's not the case. It is not asking you to re-weigh the evidence to look to ask you to determine whether there was substantial evidence. That is in fact within your power. That is of course the standard of review. Finally, let me say one thing about the standard the government is asking in its briefing. Perhaps this has not come through clearly. I'm not saying that they are arguing for a different causation standard per se but rather what they are arguing is that we have to present expert testimony. They argue that this court and the administrative judge should disregard what Mr. Schechner said and what Mr. Elizondo said because they are lay witnesses. They said that in their brief which I quoted. They are arguing for an expert witness standard that we have to bring forward a psychiatrist who is going to say, I've examined Mr. Schechner I've examined his conduct. It is my opinion, my professional opinion that his mental impairment caused this particular behavior. That's inappropriate for the reasons we've stated in our reply brief. Among other things, that's asking an employee who has just been fired to go out and hire a testifying expert as opposed to using a treating physician. Thank you. Thank you Mr. Holmes. Thank the parties. The case is submitted.